WILLIAM GILLIGAN, Appellant, v. WALTER O. REHM, III, et al., Respondents.— MEMORANDUM BY THE COURT. Appeal from an order of the Supreme Court at Special Term, entered August 29, 1969 in Warren County, which granted a motion by defendants for summary judgment dismissing the complaint, and from the judgment entered thereon. Appellant seeks specific performance of an alleged contract for the sale of real property. Respondents contend that the alleged contract is void under the Statute of Frauds. In order to determine whether an enforceable contract between the parties for the sale of the property came into existence, the correspondence between the parties must be examined. On August 20, 1968, the respondents wrote to the appellant, a lawyer, stating that they would be willing to sell the lots adjacent to appellant's summer home near Bolton Landing. Appellant regards this letter as an offer to enter into a contract. In his letter dated August 28, 1968, appellant replied that after his inspection of the deeds on file, he was " not interested in acquiring such title as you have, because it would put me in the position of buying a potential lawsuit, unless you obtain or have obtained from Mrs. Duell a corrective deed ". On September 4, 1968, respondents' attorney indicated that a survey would clear up one of the objections and further stated that the other alleged errors did not exist. Appellant's letter of September 9, 1968 again criticized respondents' deeds and concluded: " Until I receive a satisfactory explanation from Coulter & McCormack, I cannot accept the description in the Rehm deed as correct." However, appellant did not close the door to further consideration because he said: " I have ordered from the County Clerk a copy of the Rehm deed, the Wilson deed, and of the earlier deed to Stephen M. Pratt in an effort to determine whether we can straighten this mess out." He then undertook to have the deeds examined by a title and mortgage company, although he received a letter from the respondents' attorney dated September 12, 1968, informing him that he had advised his clients that the appellant apparently was not a seriously interested potential purchaser. He did nothing further until April 18, 1969, when he wrote respondents' attorney enclosing a formal contract and a check for $400. Respondents' attorney wrote on May 20, 1969 advising appellant that the respondents had sold the lots to a third party. The decision reached by Special Term that the letters indicate that appellant never accepted respondents' offer of August 20, 1968 is supported by the evidence. Appellant's letters of August 28, 1968 and September 9, 1968 make clear his rejection of the offer of sale, and his willingness to purchase the land only if a new deed was obtained from respondents' grantor. Mr. Garlick's letter of September 4, 1968 makes it clear that respondents refused to obtain a new deed. Each offer by a party was rejected at least in part by the next letter of the other party. The affidavits do not reveal an unqualified acceptance of an offer or counteroffer. It appears that the parties did not wish to be bound by any letter other than a formal written agreement. Even appellant admits that he did not intend to be bound to purchase the real property. In his brief he states: " As a lawyer, the plaintiff did not wish to accept an offer which did not correctly describe the property, and, on the other hand, did not wish to

reject the offer, but preferred to give the defendants an opportunity to correct the description." The fact that appellant did not consider himself legally obligated is demonstrated by the manner in which he ultimately submitted the proposed written contract. He sent a copy of the proposed agreement, unsigned, to the respondents and a signed, duplicate copy to an officer of the title company. Appellant further contends that acts of part performance by him are sufficient to avoid the Statute of Frauds. He relies on steps he took to obtain a title search in an effort to straighten out boundary lines. In our view, these alleged acts of part performance are inadequate under the decided cases to overcome this defense. The courts of this State have adhered to the " unequivocally referable " rule. (See *Wilson* v. *Le Van,* 22 N Y 2d 131.) The Court of Appeals enunciated this theory in *Burns* v. *McCormick* (233 N. Y. 230, 232) where Judge CARDOZO wrote: " Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance ' unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing. ' An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance' (*Woolley* v. *Stewart,* 222 N. Y. 347, 351). What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done." Here the performance relied upon by the appellant was consistent with his efforts to determine whether he should enter into serious negotiations for the purchase of the land. He appears to be a cautious individual who apparently was not interested in binding himself to a contract until he was certain that title could be cleared and insured. Judgment and order affirmed, without costs. Herlihy, P. J., Reynolds, Staley, Jr., Greenblott and Sweeney, JJ., concur in memorandum by the court.